## WINOKER *v.* WARFIELD *et al.,* receivers.

A railway company is liable for a tort committed by its agent in the business of the company and within the scope of the agent's employment. Applying this doctrine to the allegations of the petition, it was not open to general demurrer.
AUGUST 22, 1911.

Action for damages. Before Judge Seabrook. Liberty superior court. February 21, 1910.

In a suit brought by Winoker against the receivers of the Seaboard Air-Line Railway, the substance of the petition here material was: The petitioner went to the freight warehouse of the railway company at Dorchester, a station on the railway line, for the purpose of paying the freight charges due by him, to the defendants on a lot of goods shipped to him over the line of the company to Dorchester. When he arrived at the warehouse, the station agent in charge thereof and to whom he intended to pay such freight charges, was busy delivering freight to another person; and while waiting for the agent to finish the business in which he was then engaged, the petitioner seated himself upon the steps of the platform in front of the warehouse, and entered into a conversation with a section foreman of the company. During this conversation the

petitioner informed the section foreman that a short time previously petitioner had, with the consent of the railway officials, taken the place, for a few days, of the company's agent at Way's station on the company's line, and had, during the temporary absence of the agent at that station, performed his duties including the selling of tickets to passengers. At this point in the conversation, one Walter Belk, "in the employment of said receivers as special agent," who was standing near by, "without petitioner having addressed a word to [him], . . said to petitioner that he (Belk) had told petitioner that petitioner must never come around any of the railroad offices again, and that if he (Belk) ever caught petitioner in any of the railroad offices selling tickets, he (Belk) would kick petitioner out of them, and the said Belk then cursed petitioner [applying to him a vile name], . . and ordered petitioner to get down off the steps whereon petitioner was sitting." Petitioner obeyed; whereupon Belk caught his shirt near the collar, again applying to him a vile name, and ordered him to leave the grounds of the railway company, at the same time pulling him across the tracks towards the edge of the company's right of way. "To this treatment petitioner protested and told said Belk that he had no right to put him off the company's grounds, as he was there on business with the agent, and [that Belk] had no right to curse petitioner. The said Belk refused to desist, but continued his hold on petitioner and endeavored to pull petitioner across the remaining tracks of said railroad towards the edge of said right of way, and repeatedly called petitioner [a vile name] . . until finally petitioner replied to him by saying, 'you are another' [applying to Belk the same vile name] . . whereupon the said Belk knocked petitioner down," violently beating him and inflicting serious wounds upon his head. "Petitioner says, that for some time previous to and at the time the said Walter Belk cursed, abused, and beat petitioner, as aforesaid, the said Belk was in the employment of and a servant of said receivers, occupying the position known as special agent of said receivers in the conduct of the business of said railway, and that the duties of said special agent were, generally, to investigate, detect, and report any delinquencies or wrong-doing by the agents or servants of said receivers, relative to the business of said railway, and to investigate, detect, and take such steps as were legal, to prevent and to punish any wrong committed by any one against

said railway or its property; and that at the time the said Belk assaulted and beat petitioner, as aforesaid, he (Belk) was actually on duty for said receivers, as special agent, as aforesaid, the particular duty that called said Belk to said Dorchester station at said time being to investigate, detect, and take necessary action to apprehend the party who had opened and left open a switch on the line of said railway at a point known as Limerick, a short distance from said Dorchester station; and that at the time said Belk assaulted and beat petitioner, as aforesaid, the said Belk was acting upon the claim that your petitioner was an intruder and a trespasser on the property of said railway and acted in the line of his duty as said special agent to eject petitioner from said property."

The character and the extent of the wounds inflicted by Belk on petitioner were set forth in detail, as well as his physician's bill incurred by reason thereof, and also the pain and suffering he endured on account of the wounds inflicted by Belk, and the damages he had thereby sustained. The petition was dismissed on general demurrer, and the petitioner excepted.

*A. S. Way* and *W. T. Burkhalter,* for plaintiff.

*Anderson & Cann,* for defendant.

FISH, C. J. (After stating the facts.) The doctrine that a principal is liable for a tort committed by his agent in the business of the principal, and within the scope of the agent's employment, is so well settled that no citation of authority is needed for its support. The question is, did the allegations of the petition now under consideration make out a case of liability against the defendants under the doctrine stated? The petition showed that the plaintiff had a right to be at the defendants' freight warehouse for the purpose of paying a freight bill due by him; and that while there, Belk, an agent of the defendants, unlawfully assaulted and beat him, but not in the presence of the agent who had charge of the freight warehouse and to whom the plaintiff intended to pay freight charges. According to the petition, Belk was the "special agent" of the defendants, and, as such, it was his duty, among others, generally, to investigate, detect, and to take such steps as were legal to prevent any wrong from being committed against the property of the railway company. And at the time he unlawfully assaulted and beat the plaintiff, while the latter was at the defendants' freight warehouse for the purpose of paying a freight bill, Belk was, in the

language of the petition, "acting upon the claim that your petitioner was an intruder and a trespasser on the property of said railway, and acted in the line of his duty as said special agent to eject petitioner from said property." When the plaintiff informed the section foreman of the railway company that he (the plaintiff), a short time previously, had temporarily acted as the agent of the company with the consent of its officials, and as such agent had sold tickets to passengers, Belk interrupted the conversation between the plaintiff and the section foreman, and said to the plaintiff that he (Belk) had told him never to come around any of the railroad offices again, and that if he (Belk) ever caught plaintiff in any of the railroad's offices selling tickets he would kick plaintiff out of them, and, cursing plaintiff, ordered him to leave the grounds of the railway company, at the same time making the assault upon him. From these allegations it may be fairly inferred that the general duties of Belk were of a detective character, and that in his opinion it was to the interest of the company and for the protection of its property that the plaintiff should be ejected therefrom; and that Belk, acting in his capacity as special agent for the receivers of the company, and in the line of his duty as a detective, undertook to eject the plaintiff from the premises of the railway company as an intruder thereon. It follows, therefore, that the petition was sufficient to withstand a general demurrer, and to entitle the plaintiff to go to the jury, in order that they might, under the evidence to be submitted, pass upon the question whether Belk was acting in the business of the railway company and within the scope of his employment when he committed the alleged assault and battery.

*Judgment reversed. Beck, J., absent. The other Justices concur.*